## C. J. Ramlack *v.* Joseph Wolf, Appellant.

*Promissory notes—Accommodation indorser — Evidence—Question for jury.*

In an action by a holder of a promissory note against the first indorser, who was an accommodation indorser, it appeared that the second indorser owed the holder $1,000 on a judgment note and over $800 on book account. Both the holder and the second indorser testified that the note in suit, which was for $2,000, was given in payment of the judgment note which was surrendered, and also in payment of the book account, and that the difference making up the $2,000 was paid by the holder to the second indorser in cash. *Held*, that the evidence was sufficient to support a verdict and judgment against the first indorser for the full amount of the note.

Argued Oct. 27, 1896. Appeal, No. 37, Oct. T., 1896, by defendant, from judgment of C. P. No. 2, Allegheny Co., Jan. T., 1894, No. 468, on verdict for plaintiff. Before STERRETT, C. J., GREEN, WILLIAMS, McCOLLUM, MITCHELL, DEAN and FELL, JJ. Affirmed.

Assumpsit on a promissory note.   Before EWING, P. J.

The facts appear by the charge of the court, which was as follows :

This suit is brought on a note made by Adolph Hollander to the order of Joseph Wolf, the defendant, dated July 12, 1893, for $2,000, at four months after date, payable at the Freehold Bank.   The note was indorsed by Joseph Wolf, which is admitted, and afterwards by J. J. McGuire, and was protested for nonpayment at its maturity.   The note, on its face, looks like an ordinary business transaction.   There is nothing on the face of it to put anybody on guard or to arouse any suspicions that it is not all right in every way, or that Joseph Wolf is even an accommodation indorser.   It was admittedly in the hands of Mr. Ramlack, the plaintiff, at the time of its maturity and was protested on his account.   It was left at bank for· collection.   Now on the face of the papers—the making of the note, the indorsement, the failure of Hollander to pay and the protest—the holder is entitled to recover.

The defense set up is, first, that Joseph Wolf was an accommodation indorser for a specific purpose, as to J. J. McGuire, the after indorser, and that, as between himself and McGuire, he would have, according to his testimony, a perfect defense. A second branch of it is, at least as to a part of the note, and it was claimed originally as to the whole of it, that Ramlack stood in the same position as McGuire did, and could not recover because McGuire could not.

Now let us take the first part of the case.   The testimony of Wolf, Hollander and McGuire agrees that Joseph Wolf is only accommodation indorser.   That is not important here, because if Wolf were the maker of it—if what he claims be true—he would have the same defense.   They allege, on the part of the defendant, that the note was given under these circumstances : They say that Hollander was about to buy a half interest in the liquor business of McGuire, who had a wholesale license and was carrying on business in the city of Pittsburg, and that this indorsement was given on the note of Hollander as collateral security, to be good only, and to be used only, in case the liquor license that McGuire had got, to run from the 1st of May, should be transferred to the firm composed of McGuire and Hollander ; and that that license never having been transferred,

the consideration failed, and that McGuire was bound to hand it back.   On the other hand, McGuire says that the note was given in absolute payment, and the indorsement in absolute payment, of a transfer of one half interest in the stock, and in the business, and in the profits; and that it was not in contemplation to get a license transferred right away, but to carry. on the business under the old license until the next license court, May 24, when application would be made in the name of the firm.

You must determine the question of fact between them, and if you do not determine that question of fact in favor of the defendant, Wolf, you need not trouble yourselves about the balance of the defense.   On the one side you have the positive testimony of Mr. Wolf and Mr. Hollander that it was given, not as payment for a transfer of the interest, but as security that when the license was transferred, then Hollander was to become the owner, and the notes would be used; and you have the additional testimony on that point of the bookkeeper of McGuire, that no new books or accounts were opened; that the business was carried on in the books as before.   On the other hand, you have the positive testimony of Mr. McGuire that it was an absolute sale; that there was a written agreement for a transfer; that they had signed, and, it seems, there were two copies of it, one given to each—that is not in dispute, but neither side produces them,—and that it was not intended to have a transfer of the license at that time.   And you have, in addition, the fact testified to by two witnesses and testified to by the bookkeeper, that an inventory of stock had been taken, and that from this time Hollander stayed there, was there attending to business, was selling and "working hard," and was in and around the place and attending to business, and you have, on each side, a presumption of fact against the testimony of each of the parties.

[All these men—McGuire, Wolf and Hollander—had been in the liquor business, and it is fair to presume that they knew the law.   Now, Wolf and Hollander knew, or ought to have known, and I have no doubt did know, that before a license could be transferred from McGuire to McGuire & Hollander, Hollander and McGuire would have to swear that Hollander was part owner, an absolute, actual owner, and that if such an

arrangement had been given in a statement to the court, as they alleged was the contract, the license would not have been granted; and on their theory it was intended that somebody should commit perjury and commit a fraud on the court and the public; and on Mr. McGuire's theory, that the two were to carry on the business and share the profits, from the middle of July to the next May, on his old license, they knew that they would both be guilty of violation of the law, and liable to be indicted, fined and imprisoned. Well, they say sometimes that those of us who have to hold license court are very suspicious of testimony, but when we have hundreds of such exhibitions, it is not very strange that we should be. Now that is the outline of the testimony on each side.] [4]

If you find affirmatively that this note was given, not for a transfer of one half of this interest in the stock and business of McGuire to Hollander, but was simply conditional, and given by Wolf to be held by McGuire, and not used at all, unless the license was transferred to Hollander and McGuire jointly, then McGuire had no right to use it for any other purpose, and Wolf would have a defense as to McGuire. The burden is on Wolf to satisfy you of that by the weight of testimony. If you do not find that fact affirmatively in favor of Wolf, you need not inquire as to the next. If you do find it affirmatively—that it was only to be used for this specific purpose, and be held until after a transfer of the license—then you go on to the next question, to see whether he has a defense against Mr. Ramlack.

The maker or indorser of a note of this sort, giving it out to another, runs the risk of it getting into the hands of an innocent holder for value, and he has to pay it in that case, regardless of what the equities may be as against the party to whom it was given. It is the commercial law and is a rule well settled, and, as a rule, the party who makes a note of this kind may expect to pay it.

Mr. Ramlack says he is a holder for value; he says he got it on the 29th day of August, 1893, and got it for value. It didn't fall due until November. There is a dispute as to when he got it, but I do not think it is very important, and yet it is some illustration of the difference in testimony and who recollects aright. According to the testimony of Mr. Ramlack and his bookkeeper, Mr. Hilger, it was got on the 29th day of Au-

gust, and on that day entries were made in the books in regular form and order, crediting this note and showing what was done with it, and, so far as the books are concerned, so far as I have examined them, they appear to have been made at the time. It is in regular order of business. Now, I do not think it is very important whether it was on the 29th day of August or the 1st day of September, or after the first Saturday of September. Mr. Hollander and Reinhart, the bookkeeper, say that McGuire had the note at that time, and McGuire says—

By Mr. Robb: Reinhart says he saw a paper—

By the Court: Yes; he first said he saw McGuire have it on that day, but, on cross-examination it appears that he did not have it in his hand at all. He says that McGuire simply took a piece of paper and held it up and said: " Here is the note, but I won't give it to you." Mr. Hollander says that Mr. McGuire had the note on the first Saturday of September; that he saw it —and McGuire says he had not. Neither counsel asked Mr. Hollander as to whether or not he had the paper in his hand, and if Mr. Reinhart's testimony be correct, he did not have it in his hand—neither Hollander nor Reinhart.

Now, as to what it was taken for. First, the testimony of Mr. McGuire, Mr. Hilger and Mr. Ramlack is that $110.49 was paid in money. And let me say here, there is not only no evidence, no proof, that Mr. Ramlack knew anything wrong with this note, or any equities as between McGuire and Wolf about it, but there is nothing to create suspicion, and the question is: Did he pay value for it? It is virtually conceded that as to this $110.49 he is a holder for value. Next it is testified to by Mr. Ramlack, Mr. Hilger and Mr. McGuire that on the 25th day of April, 1893—which was about the time, I presume, that the granting of license to McGuire was announced; just before the license would take effect—Mr. Ramlack loaned $1,000 to Mr. McGuire, and took his judgment note for it, and that when this $2,000 note in suit was brought, that $1,000 judgment note was given up as paid by this $2,000 note. Now, if that were the case, if that were done, that security given up and this note taken, that is a good consideration, a valid consideration, to destroy any defense, so far as that $1,000 is concerned. If you believe that testimony, that there was $1,000 loaned to Mr. McGuire beforehand, for which his note was held by Ramlack, and

that note given up for this note, that is good as to this note. That would be $1,000 more. [Now, the principal contest is this : There was $889.51 of an open book account, that Mr. Ramlack, who was also a liquor dealer, had against McGuire, and that was taken into consideration in taking the $2,000 note. The $1,000 note, and probably some interest on it—I don't think there is any testimony on that—and the open book account were added together, and then the difference taken. That was less than the $2,000, and the difference was paid in cash. Now then, as to the open book account: If this note as to that account was taken simply as collateral security, as it is called, as additional security for the claim as to that much of it, the plaintiff is not a holder for value, because he gave up nothing and lost nothing; and the presumptions are that it was so taken. That is the general rule. If somebody is indebted to one of you on an open book account, or for goods sold, or for anything, and he gives you his note, running for some time, or gives you somebody else's note, and there is nothing said about it, nothing else than that, the presumption is that it is simply taken as collateral security, and you may sue on the original debt and recover, and you may also sue on the collateral. That is the presumption, and the burden is on Mr. Ramlack to satisfy you that he took this in absolute payment of that book account. He says that he did, and you must take into consideration the testimony in regard to that, and his bookkeeper said he did. I do not recollect what McGuire said about that. You will recollect it probably. You take into consideration what was said. It requires something more than an intention; there must be something to indicate that intention. The fact that cash was paid for the balance is a fact and a circumstance in favor of Mr. Ramlack's theory that it was taken in payment, because, if taken as collateral security, it would more likely have been held for the whole of it until that debt was paid; but you must find affirmatively that it was taken in absolute payment of the book account before you can find that Mr. Ramlack is a holder for value as to that part of it. It is a question of fact for you as to that $1,000 note, but the weight of evidence seems to me to be overwhelmingly in favor of it. As to the other, the book account, I express no opinion; that is a question for you.] [3]

Verdict and judgment for plaintiff for $2,248.85.   The court refused a new trial in the following opinion :

In this case, under the evidence, which was uncontradicted, there was necessarily a verdict for the plaintiff for that part of the note covered by the thousand dollar judgment note surrendered by Ramlack, and for the cash paid, and the only question is as to the bill for merchandise which was credited with the balance of the note.   The charge fully instructed the jury that if they found the contention of the defendant to be correct— that he was an accommodation indorser, and that the note had been improperly used by McGuire to enable the plaintiff to recover the amount of this bill on which the note had been credited, the note must have been taken in payment, and not merely as collateral; and it seems to us that what was payment was fully and sufficiently explained to the jury.   We would have been entirely willing that the jury should have found for the defendant as to that balance, but the plaintiff said the note was taken in payment of this bill; his clerk said so and McGuire said so.   In addition, it was not the ordinary taking of a note for the amount of a bill.   It is a much stronger case than if the note had been given for the precise amount of the bill.   In this case, the circumstances, uncontradicted, were that the note was offered by McGuire ; it was accepted as payment of the $1,000 and that thousand dollar judgment note was given up; the bill for merchandise was then added to the thousand dollar note, and the difference, making up the $2,000 was paid in money.   These circumstances strengthen the testimony on the part of the plaintiff that the note had been taken in payment, and we are unable to say that the jury was wrong in its finding.

*Errors assigned* among others were (3-4) above instructions, quoting them.

*William Yost,* for appellant, cited: Cozens v. Middleton, 118 Pa. 632 ; Smith v. Popular L. & B., 93 Pa. 19 ; Carpenter v. Bank, 106 Pa. 173; Liggett Co.'s App., 111 Pa. 291 ; Kirkpatrick v. Muirhead, 16 Pa. 123 ; Depeau v. Waddington, 6 Whart. 232 ; Maynard v. Sixth Nat. Bank, 98 Pa. 252; Huddleston v. Bellevue Borough, 111 Pa. 122.

*John S. Robb,* for appellee, cited: Bardsley v. Delp, 88 Pa. 420 ; Dovey's App., 97 Pa. 162.

PER CURIAM, November 9, 1896 :

A careful consideration of this record has failed to convince us that there was any substantial error in the trial. On the contrary, the instructions complained of in the assignments of error appear to be correct. The case depended on questions of fact which were properly submitted to the jury and by them found in favor of the plaintiff.

For reasons given in the court's opinion on the motion for a new trial, we think the judgment should not be disturbed.

Judgment affirmed.